## THE WESTERN STAGE COMPANY v. WALKER.

In all matters within the scope of partnership dealings, or falling within the ordinary business and transactions of the firm, so long as the relation exists, each partner has the right and power to bind the partnership.

By virtue of the relation, each partner is constituted the general agent of the firm, and is vested with a power enabling him to act at once as principal, and as the authorized agent of his copartners.

Whilst each partner may bind the partnership by his contract, in any matter within the limits of the partnership business, he cannot bind it by any contract beyond those limits; and a dissolution of the partnership, puts an end to his authority.

But where the partnership has contracted engagements which cannot be fulfilled during the time limited for its existence, the partnership must continue, for the purpose of performing such outstanding engagements, and of taking

and settling all accounts, and converting the property, means, and assets of the partnership, existing at the time of its dissolution, for the benefit of all interested, although for all other purposes it is actually dissolved.

In the fulfillment of the outstanding engagements of the firm, and in the settlement of its business generally, the authority of each member remains the same after, as before, the dissolution.

The rights of the different partners are not changed by dissolution. Where there is no stipulation in the articles of copartnership to limit or control their rights, a majority of the partners, *acting fairly, and in good faith,* may conduct the partnership business, notwithstanding the dissent of a minority.

Where a contract, made by a majority of a firm, is not made in *good faith,* as to the other partners, the interest of the partners making the contract, only passes to the purchaser, and he becomes a joint owner with the partners whose interest did not pass.

Where the court has misdirected the jury on an immaterial point, or on a question not important to the decision of the cause on its merits, a new trial will not be ordered.

Where, in action of replevin, the jury found for the defendant, as to the right of property and the right of possession, and assessed his damages at a certain sum, but did not find the value of the property replevied; *Held,* That this court must presume, that the jury were properly instructed as to the measure of damages, and that the finding of the value of the property was a matter of form.

The question as to the correctness of a decision of the District Court, must first be raised in that court, by bill of exceptions, before it can be passed upon by the appellate court.

## Appeal from the Des Moines District Court.

THIS was an action of replevin, to recover possession of two stage coaches and eight horses and harness, valued at $1,600. The defendant pleaded the general issue, and property in himself. The plaintiffs, to sustain their right to the property, and to its immediate possession, gave in evidence a written agreement with the firm of John Frink & Co., of Chicago, dated May 26th, 1854, by which the said firm agreed to sell and deliver to plaintiff, all the stage stock which they, the said John Frink & Co., at the date aforesaid, had in the state of Iowa. The contract, however, was an executory one, not to be carried into effect until the 1st of July succeeding; and in the meantime, the stage stock in Iowa, was to be appraised by persons selected by the parties.

On the 1st of July, the property was to be delivered, and the consideration money paid. On the 3d of July, the property having, in the meantime, been appraised, and a schedule and appraisement of the same returned, John Frink, one of the firm, executed a bill of sale, in the name of the firm, purporting to transfer and deliver to plaintiffs, all and singular, the property mentioned and described in the schedule and appraisement, and situate and being in the state of Iowa. The schedule embraced the property in dispute, appraised at sixteen hundred dollars. Martin O. Walker, the defendant, one of the firm of John Frink & Co., was present when the bill of sale was about to be delivered to plaintiff, and dissented to the sale and delivery of the property, first in words, and then in writing, by indorsing his protest on the schedule of the property, and on the bill of sale, to which it was annexed. It further appeared in evidence, on the part of the plaintiffs, that the property in dispute, was in the state of Iowa, on the 26th of May, 1854, and up to the 10th of June, 1854, running on the stage route of John Frink & Co., between Burlington and Fairfield, Iowa ; that between the 15th and 20th of June, it had been removed from Iowa, and put upon the line in Illinois, between Burlington and Peoria, where it continued, until replevied in this suit ; that it had been removed to Illinois at the time the appraisers came to Burlington to make their appraisement ; but they nevertheless included the same in their schedule. On the 3d of July, when the bill of sale was executed, the plaintiffs paid Frink & Co., for the whole of the property embraced in the schedule. The defendant refusing to deliver the property in dispute to plaintiffs, on the written order of John Frink & Co., this suit is brought for its recovery, and under the writ of replevin, the property is delivered by the sheriff.

The defendant, Walker, in support of his claim to the property, gave in evidence, a bill of sale from John Frink & Co. to himself, dated June 10, 1854, whereby the said firm, in consideration of $65,000, " grant, bargain, sell, assign, transfer, and set over, to Martin O. Walker, all the stage

stock then used or owned by them (Frink & Co.) in the state of Illinois, including (among others) the stage stock on the route between Peoria and Burlington.   Payment was to be made on the 1st of July, at which time the property was to be considered vested in defendant, without any further act.   On the 30th of June, Frink & Co., by their receipt, indorsed on the bill of sale, acknowledge payment in full. It was further shown by defendant, that in April, 1854, Frink & Co., by their agent at Burlington, made an arrangement with the steamboats, to carry the mails and passengers on the Burlington and Peoria route between Burlington and Oquawka, at which time the property in question was withdrawn, by the agent, from the Peoria route, and put upon the route from Burlington to Fairfield, as an accommodation line ; that between the 15th and 20th of June, 1854, in consequence of the failure of the steamboats to carry the mails and passengers, it was taken back to Illinois, and again placed upon the route from Burlington to Peoria; that when withdrawn from the Peoria route, the same was deficient two coaches and eight horses and harness.   Frink & Co. were not informed by the agent, of the removal of the stock from Illinois to Iowa.   It further appeared in evidence, that the partnership of John Frink & Co. expired, by limitation, on the 1st of July, 1854 ; that M. O. Walker, the defendant, was one of the five members of the firm, present when the bill of sale was about to be made to plaintiffs ; that he objected to the same, and indorsed his protest against it on the bill of sale and schedule, and gave as his reason for his dissent, that he had previously purchased of Frink & Co. two coaches and eight horses belonging to the Peoria route, and included in the schedule attached to the bill of sale, about to be made to plaintiffs.   In consequence of Walker's dissent, indorsed on it, the plaintiffs objected to receiving the bill of sale, and it was never delivered ; that on the next day, at the request of three members of the firm, in the absence of Walker, a second bill of sale, a copy of the first, with the exception of Walker's protest indorsed on it, was made and executed in the name of the firm.   The

reason of making the second bill of sale, was on account of Walker's dissent, indorsed on the first. Plaintiffs were present, and knew of Walker's dissent, and of his reasons for the same. The plaintiffs asked the court to give the following instructions to the jury:

"1. That for the purpose of carrying out and perfecting the contract of May 26, 1854, the firm or copartnership of John Frink & Co. did exist on the 3d day of July, 1854, the date of said bill of sale." This instruction was refused.

"2. If the Western Stage Company had not notice of the dissolution of the firm of John Frink & Co., but dealt with them after its dissolution, in carrying out the contract of 26th May, 1854, then said firm, and each member of it, is bound by such contract of confirmation, after said dissolution." This instruction was given, with the following qualification: "This is true; but if the plaintiff knew, or had notice, that Walker, of the firm of J. Frink & Co., was present, and dissented from the terms of the bill of sale, at the time of execution, then it would not be binding on Walker."

"3. That for the purpose of carrying out the contract of May 26th, 1854, the copartnership of John Frink & Co., did exist on the 3d of July, 1854, and the bill of sale, signed by them on that day, binds each member of the firm of John Frink & Co." This instruction was given, only with the following qualification: "Not if any member of the firm was present, and protested against the execution and delivery of said bill of sale."

"4. If at the date of the contract between John Frink & Co., and the Western Stage Company, dated May 26th, 1854, the firm of John Frink & Co., was in existence, not dissolved, but doing business, and said copartnership was by its own limitation to be dissolved at a time prior to the confirmation of said agreement, or transfer of the property therein mentioned, and to be performed on the part of said John Frink & Co., after the dissolution of said firm, then for the purpose of carrying out and consummating said agreement of the 26th of May, 1854, said copartnership did, for that purpose, exist; and if said bill of sale of July 3, 1854,

The Western Stage Company v. Walker.

was made and executed in accordance with said agreement of May 26, 1854, as then conptemplated and agreed, it was valid and binding on each member of said firm of John Frink & Co., and passed the title to the property mentioned in said bill of sale and schedule, to the Western Stage Company, as against the firm of John Frink & Co." This instruction was given, only with the following qualification: "This is true, if they all united in making said bill of sale."

"5. That a majority of the members of a firm, have the power to bind all of its members, after its dissolution, in the confirmation or completion of a contract, made and entered into by said firm, for a valid consideration, before its dissolution.

"6. If the jury believe that the protest of Walker was not made, until after the money was paid, and the bill of sale signed, then the bill of sale passed the title to the property." These two instructions were refused by the court.

"7. If the property in controversy, was in the state of Iowa, on the 26th May, 1854, then it was included in said original agreement, and if contained in the bill of sale, passed the title to plaintiff, unless the jury believe that Walker protested before the money was paid, or the bill of sale signed by John Frink & Co." This instruction was given, only with the following qualification: "and delivered to plaintiff." To the refusal of the instructions as asked, and to the modifications of the same, by the court, as well as to the giving the following instructions, asked by defendant, the plaintiffs excepted:

"1. The plaintiff, in order to recover in this case, must prove a legal title to the present possession of the replevied property.

"2. The agreement between J. Frink & Co., and plaintiffs, dated May 26th, 1854, is not a conveyance, but an agreement to sell; and does not convey title, nor any right of possession of the property, to plaintiffs.

"3. The bill of sale between plaintiffs and J. Frink & Co., if made without Walker's assent, did not convey Walker's interest in the property, if Walker's dissent was known to

plaintiffs, or their agent, at the time; and in such case, Walker is a joint owner with plaintiffs, and plaintiffs cannot maintain this action against him.

"4. The contract between J. Frink & Co., and defendant, Walker, dated June 10th, 1854, is a conveyance to take effect on the 1st day of July, 1854; and upon the performance of the condition specified, Walker had the right to the possession of the property conveyed to him by his said contract.

"5. After the dissolution of the partnership, no partner has any right to convey the partnership property by a conveyance in the firm's name, or to sign the firm's name to such conveyance, without the consent of all the partners; and if he attempts to do so, his act will not bind any partner who dissents therefrom, and will not carry the dissenting partner's interest, and the party purchasing, cannot maintain replevin against the dissenting partner, especially if the party purchasing knew of the dissent.

"6. If plaintiffs knew of Walker's dissent to the sale to them, they could not acquire a title to Walker's interest in the property attempted to be sold, by having a new bill of sale executed, without Walker's knowledge, for the purpose of avoiding his indorsement of dissent, and the second bill of sale is no better than the first, and conveys no more than the first bill of sale.

"7. If plaintiffs, by one of their partners or agents, were present when Walker dissented, and knew of his dissent, they are chargeable with notice of his dissent to the second bill of sale, unless they show that he assented to the second bill of sale."

The jury found the right of property, as well as the right of the possession, in the defendant, and assessed his damages at sixteen hundred and eighty dollars. The plaintiffs moved to set aside the verdict, and grant a new trial, for the following reasons:

1. That the verdict of the jury is against the evidence in the case.

2. The verdict is contrary to the law and the instructions, as given in charge by the court.

3. The verdict does not find the value of the property.

This motion being overruled, and judgment rendered on the verdict, the plaintiffs appeal, and assign the following errors :

1. The court below erred in refusing to give the instructions, each and all, as asked by plaintiffs, to the jury.

2. The court erred in modifying said instructions.

3. The court erred in ruling out the answer of Wm. Vernon, to the third cross interrogatory of said plaintiffs.

4. It erred in giving the instructions to the jury, as asked by defendant.

5. The court erred in instructing the jury, as stated by said court, in the conclusion of plaintiff's second bill of exceptions, as to the facts connected with the bill of sale, or contract between M. O. Walker, and John Frink & Co., by verbal instructions.

6. The court erred in overruling plaintiffs' motion for a new trial.

7. The court erred in entering the judgment which was entered on the verdict of the jury.

8. The court erred in its instructions and proceedings, generally.

*Browning & Tracey*, for the appellants.

*Starr & Phelps*, for the appellee.

STOCKTON, J.—On the trial of this cause, in the District Court, the plaintiffs asked that certain instructions should be given to the jury, which were refused by the court, and the refusal is assigned for error.

By these instructions, the court was asked to charge the jury as to the right of a majority of the partners, against the will of a minority, to bind the firm in the consummation of a contract made before dissolution; and as to the effect and validity of the bill of sale from John Frink & Co. to plain-

tiffs, dated July 3d, 1854. Our first inquiry is, as to the correctness of these instructions. We ascertain from the evidence, that the partnership firm of John Frink & Co., expired by limitation, on the 30th of June, 1854, at which time the agreement with plaintiffs, of the 26th of May, had not been carried into effect. The property, comprising the stage stock of the firm in the state of Iowa, had been appraised, and a schedule of the same returned by the person appointed for that purpose. When the parties met on the 3d of July, to consummate the agreement, by the payment of the money, the execution of the bill of sale, and the delivering of the property, there were five members of the firm of John Frink & Co. present. All of these assented to the sale to the plaintiffs, except Walker, who protested against the same, and gave his reason for his dissent. It does not appear how many persons composed the firm, nor whether those present were a majority of the whole. The question has been treated, in the argument, as though a majority were present, and assented; and so we shall consider it.

Neither does it appear, that there was anything in the written articles of partnership, if any such existed, to limit the rights of a majority, or to qualify, what we understand to be otherwise, the well settled rule of law, that in all matters within the scope of partnership dealings, or falling within the ordinary business and transactions of the firm, so long as the relation exists, each partner has the right and power to bind the partnership. By virtue of his relation, he is constituted the general agent of the firm, and is vested with a power, enabling him to act at once as principal, and as the authorized agent of his copartners. Story on Partnership, §§ 101, 104; *Van Kueren* v. *Parmlee*, 2 Comst. 525; *Wilkins & Rollins* v. *Pearce*, 5 Denio, 540. But, whilst each partner may bind the partnership by his contracts, in any matter within the limits of the partnership business, he cannot bind it by any contract beyond those limits; and a dissolution of the partnership, puts an end to his authority. Story on Partnership, § 322 ; *Bell* v. *Morrison*, 1 Peters, 331. This may be stated as the general rule ;

The Western Stage Company v. Walker.

a well defined exception to which exists, where the partnership has contracted engagements which cannot be fulfilled during its existence. In which case, for the purpose of making good such outstanding engagements; of taking and settling all accounts, and collecting all the property, means, and assets of the partnership existing at the time of its dissolution, for the benefit of all interested, the partnership must continue, although for all other purposes it is actually dissolved. Story on Partnership, § 325. The agreement entered into by the firm with the plaintiffs, May 26, 1854, undoubtedly falls within this class of engagements. Though, as a contract for the sale and transfer of all the partnership stock in Iowa, it might not be considered as technically within the scope of the partnership, in view of a continuance of the business in which it had been engaged; yet, as the partnership was to expire on the 30th of June, succeeding, and as the agreement was made in view of its approaching dissolution, for the purpose of disposing of a portion of the stock which must necessarily be sold, in order to a settlement of the affairs of the firm, we see abundant reason for regarding it as a contract to be carried into effect after the dissolution of the partnership, and in relation to which it has been held, that for the purpose of making good such engagements, the partnership continues beyond the period fixed for its absolute termination. With this view of the law, as applicable to this cause, we are of opinion, that the first instruction asked by the plaintiffs, was improperly refused by the court.

In the fulfillment of the outstanding engagements of the firm, and in the settlement of its business generally, the authority of each member remains the same, after as before dissolution. The rights of the different partners are not changed, and where there is no stipulation in the partnership articles, to limit or control their rights, a majority of the partners, acting fairly, and in good faith, may conduct the partnership business, notwithstanding the dissent of a minority. Story's Partnership, § 125; Collyer on Partnership, 105. It does not appear, in this instance, that there was

anything in the partnership articles of the firm of J. Frink & Co., to change the general rules of law, or to restrict the majority of the firm in the conduct of the business, and sale of the property. The only restriction placed upon them by the law, is, that their conduct should be in good faith. Upon this subject, Justice STORY says: "In every case where the decision of the majority is to govern, it would seem reasonable that the minority, if practicable, should have no-tice, and be consulted; and if the majority should choose wantonly, to act, without information to, or consultation with, the minority, it would hardly be deemed a *bona fide* trans-action, obligatory on the latter." Story on Partnership, § 123. In *Corst* v. *Harris*, Turn. & Russ. 496, Lord ELDON says: "For a majority to say: We do not care what one partner may say, we being the majority, will do what we please, is, I apprehend, what this court will not allow."

Without undertaking to decide, whether the acts of the members of the firm present, when the bill of sale was about to be executed, were in good faith, or not, it appears to us, that there were circumstances attending the sale, which should have led the court below to submit that question to the jury. A majority of the firm, cannot arbitrarily trifle with the rights of the minority. The dissent of Walker, in the present instance, should have had the effect to arrest the sale to plaintiffs, until the objection urged by him was in-quired into, and its truth, or falsity, satisfactorily ascertained. His dissent came in good time, and with notice to the plain-tiffs. His reasons for protesting were given, and his state-ments were entirely uncontradicted, and unexplained. Not only were the other partners present, silent in regard to them, but they attempted, in the absence, and without the knowledge, of Walker, to get up another bill of sale, which should avoid the objections made to the first. Walker owned one hundred and twenty-one of the three hundred and ten shares of the capital stock of the firm, and was cer-tainly entitled to some voice in its deliberations, and it was a legitimate question for the decision of the jury, whether

the effort to smother his objections, with the circumstances attending the execution of the bill of sale, were sufficient to taint the conduct of the majority of the firm with bad faith toward Walker, and thereby invalidate the bill of sale, so far as his interest in the property in dispute is concerned.

In refusing the second, third, fourth, and fifth instructions, asked by the plaintiffs, and in giving the third and fourth, as modified by the court, the jury were in effect told, that the majority of the firm could not, under any circumstances, overrule the minority in the management of the business, and that if one member protested against the sale, his interest in the property would not pass to the purchasers. We think that these instructions, as asked by the plaintiffs, should have been given, without the modification added by the court, and with the single qualification, that the jury should believe that the majority of the firm, in making the sale, were acting in good faith. The third and fifth instructions, given at the request of defendant, are equally erroneous, in laying down the law to be, that, "if the bill of sale was made without Walker's assent, and the same was known to plaintiffs, it would not convey his interest in the property;" and that, " after dissolution, no partner has a right to convey partnership property in the name of the firm, without the consent of all the partners; and if he does, his acts will not bind any partner who dissents therefrom, and will not convey such dissenting partner's interest."

We have given our reasons, why we think the court erred in giving these instructions, and why the jury should not have been charged, that Walker's protest prevented his interest in the property from passing to plaintiffs, under the bill of sale. The question, whether it passed or not, was contingent, upon a fact to be ascertained by the jury, viz : whether the majority of the firm, in making the bill of sale to plaintiffs, were acting in good faith towards Walker. The plaintiffs were entitled to have this question passed upon, and settled by the jury. If the sale and transfer were made in good faith, the interest of Walker in the property, as one of the partners, passed with that of the other members

of the firm, to plaintiffs.  If not made in good faith, then the interest only, of the other partners, passed, and plaintiffs, as joint owners, could not maintain the action of replevin. *McIlderry* v. *Flannegan*, 1 Harris & Gill, 322.  And we must hold this to be the law, whether the plaintiffs claim under the first bill of sale, made July 3d, 1854, or under the second, made on the following day.  The plaintiffs, having had notice of Walker's dissent, if the same was of any validity, to prevent his interest in the property from vesting in plaintiffs, under the first, it was quite as effectual to prevent it from passing under the second.  If the first was bad, for want of good faith on the part of the other members of the firm towards Walker, the same objection applies, and quite as forcibly, to the second.

We have said this much upon the questions arising upon the bill of sale of July 3d, and Walker's protest against the same, because they have been argued at length by counsel, and are intrinsically important and interesting, whatever may be the effect of the conclusions we have arrived at upon the decision of this cause.  We proceed to the other questions, raised by plaintiffs' motion for a new trial.  It seems to us, that the question whether the interest of Walker in the property, passed by the bill of sale of July 3d, 1854, to plaintiffs, is altogether secondary to the question, whether or not the whole of the property had passed to Walker, under the bill of sale of John Frink & Co., of June 10th, 1854 ?  Walker claimed, not only an interest as a member of the firm, which he was unwilling should pass to plaintiffs, but he claimed that he had purchased the horses and coaches in dispute, as a part of the stage stock on the Burlington and Peoria route, and that they were his own, and not the property of the firm.  His objection to the bill of sale to plaintiffs, was that the property was not Frink & Co.'s to convey ; and whether it was or not, is the important question in this cause?  Frink & Co. sold to Walker, on the 10th of June, all their stage stock in the state of Illinois. It was sold in gross, and for a sum in gross.  They, on the 26th of May, agreed that on the first of July succeeding,

they would sell to the plaintiffs, all their stage stock in the state of Iowa, at an appraisement and by schedule, to be made and returned by persons chosen for that purpose. The whole difficulty between the parties, has arisen from the fact that the property in question had been used by Frink & Co. in both states, having been about the 1st of May, 1854, transferred from Illinois to Iowa, and again between the 5th and 20th of June, been sent back to Illinois. The persons appointed to appraise the stock sold to plaintiffs, included in their schedule the property in question, and the schedule was attached to the bill of sale to plaintiffs. The question then arises, whether Frink & Co., on the 3d of July, had any interest in the property in dispute, which they could convey to plaintiff. There is no question as to their intention, because the property was included in the schedule attached to the bill of sale, and the majority of the firm were unquestionably seeking to convey it to the plaintiffs, at the time Walker made his objections and protested against it. Had it then been conveyed to Walker, by the bill of sale to him of June 10th? Let us look at this bill of sale. In consideration of sixty-five thousand dollars, Frink & Co. agree to grant, bargain, and sell to Walker, "all the stage stock now used or owned by us in the state of Illinois, including the stage stock on (among others) the Burlington and Peoria route, and all such personal property and other articles used in, about, or upon said route, and in the state of Illinois."

The court charged the jury, that if the property in controversy was not in the state of Illinois on the 10th, the title of the same did not pass under the bill of sale, according to the strict letter of the same; but that they were authorized to judge and determine what was the intention of the parties; and if they thought it was their design to sell to Walker, all the stage stock that belonged to the Burlington and Peoria route, they should so determine by their verdict, and give to defendant all the stage stock belonging to the Illinois route, wherever it might be temporarily, or casually situated. This, in substance, is the instruction of the court,

and the jury found that Walker was entitled to the right of property, as well as the right of possession. The jury, by their verdict, ascertained that the property, in dispute, passed to Walker, under the bill of sale to him, of June 10th, 1854. We think we are justified in this conclusion, by the language of the verdict. It was directly responsive to the issue made for their decision, under the direction of the court; and there is, in our opinion, no reason for supposing that their verdict was induced or influenced, by what we consider the erroneous instructions of the court, as to the effect of the bill of sale, of July 3d, 1854. If there was any room for doubt on this subject, we should be disposed to give the plaintiffs the benefit of that doubt, by ordering a new trial. They find the right of property, as well as the right of possession, in defendant, and allow him, as damages, the appraised value of the property, with interest at six per centum per annum, from the date of the replevin till the day of the rendition of the verdict. How could the jury have found such a verdict, but by finding that the property passed to Walker, under the bill of sale of June 10th, 1854? The facts do not admit of any other conclusion. The verdict cannot be looked upon as anything but an ascertainment by the jury, that it was the design and intention of the parties, that the interest of John Frink & Co., should pass to the defendant by the bill of sale of June 10th, and that it did so pass. If it did, then, the firm had no interest in the property in dispute, to convey to plaintiff by the bill of sale of July 3d, 1854. They had previously parted with it to defendant. All the bills of sale they could have made, would not have strengthened or helped the plaintiffs' right. Walker's right, as absolute owner, overrides his interest as partner, and his dissent acquires a double significance, when it is understood as intended, not merely to prevent the transfer of his interest as a partner, but as a protest against the sale of property of which he was the absolute owner. The finding of the jury, on the question of the absolute ownership of the property, rendered it unnecessary that they should consider the question of the effect of the bill of sale of July

The Western Stage Company v. Walker.

3d, 1854. As the greater always includes the lesser, so if Walker had acquired the complete title, by the bill of sale of June 10th, there was no necessity for an inquiry on the part of the jury, whether he retained an interest as partner after the bill of sale of July 3d. The plaintiffs' only claim of title was under the latter bill of sale, and if the jury were convinced that, before the time of its execution, the parties making it, had parted with all their interest, there was little need of investigation into the validity of the bill of sale of July 3d, when, whatever conclusion they might have arrived at, it could not have altered their verdict on the paramount question of defendant's title, under the sale of June 10th, 1854. If the charge of the court had been different— if it had been in accordance with what we have indicated the law, in our judgment to be—and the jury, upon consultation, had found that the bill of sale of Frink & Co., was made in good faith—still, it could only convey to plaintiffs, the interest in the property which the partnership firm held at that time. If they had previously sold and conveyed their interest to Walker, there was none to sell and convey to plaintiffs, and the bill of sale of July 3d, passed nothing. If we could see that the charge of the court, had in any respect misled the jury, in making up their verdict upon what we deem the paramount question of the absolute title of Walker, under the bill of sale of June 10th, or had in the slightest degree prejudiced the plaintiffs' cause, we should reverse the judgment, and order a new trial. But where the court has misdirected the jury on an immaterial point, or on a question not important to the decision of the cause on its merits, we shall hesitate a long time before we disturb their verdict. We must see more in the record than we see in this, to induce us to order a new trial.

The plaintiffs' motion for a new trial rests upon the alleged ground, that the verdict was against the evidence, and against the instructions of the court, and that the jury did not find the value of the property. The jury were told that they were to decide, whether the property in controversy belonged legitimately to the Illinois, or to the Iowa

stage stock of John Frink & Co., and that if they were of opinion it belonged to the Illinois stage stock, it passed to defendant, under the bill of sale of June 10, 1854, and they were to return their verdict accordingly; or, in the language of the court, they were to effectuate the true intention of the parties, and to give to the defendant the property which in fact belonged, at that time, to the Illinois stage stock, wherever else it might temporarily be at the time." This charge of the court, left to the jury the determination of the fact, and the all important question in this case, viz : whether the property belonged to the Illinois, or to the Iowa stage stock of Frink & Co. We do not see from the record, that they have found against the weight of the evidence, or that they have given a wrong interpretation to the understanding and intentions of the parties to the bill of sale of June 10, 1854. If the property in question was part of the Illinois stage stock, on the Burlington and Peoria route, it was embraced by the terms of the bill of sale to defendant, and the verdict of the jury was in accordance with the intention of the parties to that agreement. That was a question to be determined by the jury.

The objection that the verdict of the jury does not find the value of the property, is not, in our opinion, well founded. We must presume that the jury were properly instructed by the court, as to the measure of damages, if they found for the defendant; and there is good reason to believe that the value of the property replevied, with interest, was the amount found by the jury. The finding of the value of the property, would be mere matter of form. If the amount of damages in this case were too small, it might be a matter of complaint on the part of defendant. We do not understand the plaintiffs to complain that the damages are excessive. We may state, that we have not examined the questions raised by plaintiffs' third and fifth assignment of errors, because the ruling out the answer of Vernon to the third cross interrogatory, and the verbal instructions given by the court, as to the effect of the bill of sale to defendant, dated June 10, 1854, were not excepted

to in the District Court. The question as to the correctness of the decision of that court, must first be raised there, by bill of exceptions, before it can be passed upon here.

Judgment affirmed.