## BOARDMAN & GRAY v. ADAMS & HACKLEY.

One partner cannot bind the firm, by any contract made in the name of the partnership, unless it be in a matter within the scope of the partnership dealings, or falls within the ordinary business and transactions of the firm.

Where a partnership embarked in a particular business, to which their engagements are confined, and to which alone their partnership contracts extend, by mutual agreement, enlarge the sphere of their operations, and include another branch of business, the power of each partner to bind the firm by his contracts, is co-extensive with the whole business of the partnership; and the acts of each member are as binding on the firm, in the new branch of business in which they are engaged, as they are in the former regular and ordinary business.

One partner is presumed to consent to all the acts of the other partner, within the scope of the business of the firm; and it is not necessary to show that such partner, had full knowledge of all the transactions which passed between the other partner and third persons, or that he consented thereto, when those transactions relate to the partnership business.

Where in an action against a partnership, for pianos sold and delivered, one of the partners, after denying the indebtedness, pleaded that the said firm was not a general partnership, but a partnership in the newspaper and printing business only, and that the pianos were sent to the other partner, to be sold on commission, and not to the said

Boardman & Gray v. Adams & Hackley.

partnership firm,—upon which plea issue was joined; and where it appeared that each of the partners had written letters in relation to the pianos, in their individual names; and where the court charged the jury, that the plaintiffs must recover for pianos sold and delivered, or they could not recover at all; that if the pianos were sold to one partner alone, and not to the firm, the plaintiffs could not recover in this action; that there must be satisfactory proof, either that the buying and selling of pianos, was within the scope of the partnership business of defendants, or that they jointly ordered the pianos from plaintiffs, before they can recover; that the plaintiffs having sued for pianos sold and delivered, cannot recover on proof that the pianos were sent to defendants, to be sold on commission, or on any other proof falling short of proof of sale and delivery; and that the jury must examine the testimony with reference to each of the defendants separately; and where one of the defendants asked the court to instruct the jury as follows: "1. That before A. can be liable, it is necessary for the plaintiff to prove, that he had knowledge of the whole transaction, and consented thereto; 2. That if the letter of plaintiffs does not accept the offer and terms of A., it is necessary to bring home to A. a knowledge of the contents of the letter of plaintiffs," which instructions were refused; *Held*, That the court did not err in refusing to give the instructions.

## *Appeal from the Dubuque District Court.*

### SATURDAY, SEPTEMBER 12.

The plaintiffs claim to recover the price and value of four pianos, alleged to have been sold and delivered to defendants, as partners. Hackley answers, and denies that any pianos were sold and delivered to himself and Adams, as partners. Adams answers, and denies any indebtedness to plaintiffs, either by himself individually, or as a member of the firm of Adams & Hackley. He averred further, that the said firm was not a general partnership, but a partnership in the newspaper and printing business only, and that the pianos were sent to A. W. Hackley, one of the defendants, to be sold on commission, and not to said partnership firm, nor to him, the said Adams. Issues joined on these answers, were tried by a jury. It was shown by plaintiffs, that defendants were partners in publishing the "Tribune" newspaper, in Dubuque, and in the book and job printing business. Certain letters be-

tween the parties, were also read in evidence, as follows:

DUBUQUE, June 19, 1854.

MESSRS. BOARDMAN & GRAY:

Dear Sirs:—Your advertisement of pianos is in our paper, and your offer to us of an agency, we accept. But in order to make it profitable to you, it will be expedient, if not necessary, to have one of the instruments here, as there is not one of your make in our city. Being a musician myself, and a member of the "Philharmonic Society" in this place—just formed—I am pretty confident that something can be effected, as the society, of which I am a member, anticipate purchasing one soon, and their action will control the purchase of many more. I make these suggestions; if you think there is any advantage to be gained, please inform us; and if you choose to act upon this suggestion, forward us one of your piano cuts, and charge us for the same, as we shall want it for our circulars.                    W. A. ADAMS.

DUBUQUE, June 19, '54.

W. G. BOARDMAN, ESQ.:

Dear Sir:—Annexed you will receive the letter of our Mr. Adams. Besides being an honorable and estimable man, and the best practical printer in the State, he stands at the head of the musical department in this city. I think you would promote your interest by shipping us, at once, a small, but select assortment of your instruments. There are none now here on sale. * * *I think an early and good supply, would keep out competition for a long time. But determine for yourself how many, (if any) you will send.      A. W. HACKLEY.

ALBANY, June 23, 1854.

MESSRS. ADAMS & HACKLEY:

Yours of the 19th is at hand, and would say in reply, we do not consign piano-fortes on commission. Our orders are constantly far ahead of our

Boardman & Gray v. Adams & .Hackley.

ability to supply our sales for cash or time. We have a large number of applicants for piano-fortes on consignment, which we decline. As, however, your place has attracted our attention, and believing that now is the time to introduce our instruments, and shut out others from competition, we have, after much thought, concluded to send you one or two pianos, on the following conditions : Pianos, when delivered here on railroad or canal, will then be at your risk. On the sale of a piano, you shall, if for cash, remit us the amount by draft on one of our banks or New York—said draft payable to our order, and sent by mail. From enclosed price list, you may deduct fifteen per cent. If not sold for cash—on credit, ten per cent.— sold at your risk. Interest after four months. Remittances will bear interest, on receipt. Should you prefer purchasing them out and out, we will give you six months credit, and twenty per cent. discount; and if cash be remitted on receipt of invoice, a further discount will be made of five per cent., after the twenty per cent. is deducted. These are our best terms. Should these propositions be agreeable, you will please inform us, and of the class of piano-fortes you think will sell best with you. We shall, however, forward you one or two before we can receive your answer, and you had better get them insured on the receipt of invoice. * * * * Should you continue to sell them, you will not, we presume, make any charge to us of an advertisement.

BOARDMAN & GRAY.

TRIBUNE OFFICE, DUBUQUE, Sept. 29.
MESSRS. BOARDMAN & GRAY :

We have just effected a sale of your two pianos, at six months. We have a prospect of selling two or three more, if we had them.

A. W. HACKLEY.

The plaintiff further gave in evidence, that in addition to the two pianos, first shipped to defendants, they subsequent-

ly, and pursuant to the letter of Hackley, dated September 29th, shipped to them two others; one October 7, and the other, October 14, 1854; and that they were sold on the customary terms of plaintiffs, to-wit: Twenty per cent. discount, as stated and contained in the letter of plaintiffs to defendants, dated June 23, 1854. The pianos last shipped, were left by Hackley, one of the defendants, with a merchant in Dubuque, to be sold on commission, who paid the proceeds over to Hackley. Adams was not known in the transaction with the commission merchant. The partnership of Adams & Hackley, was dissolved about the 25th of August, 1854.

The defendant, Adams, asked the court to charge the jury: 1. "That before Adams can be held liable, it is necessary for plaintiffs to prove that he had knowledge of the whole transactions, and consented thereto. 2. That if the letter of Boardman & Gray, does not accept the offer and terms stated by Adams, it is necessary to bring home to Adams, a knowledge of the contents of the letter of Boardman & Gray." These instructions were refused by the court, and defendant, Adams, excepted. The jury found a verdict for plaintiffs. A motion for a new trial was overruled by the court, and judgment rendered on the verdict. Defendant, Adams, appeals.

*Smith, McKinlay & Poor*, for the appellant.

STOCKTON, J.—The court charged the jury, that the plaintiffs must recover for pianos sold and delivered, or they could not recover at all; that if the pianos were sold to Hackley alone, and not to the firm, the plaintiffs could not recover, in this action; that there must be satisfactory proof, either that the buying and selling of the pianos was within the scope of the partnership business of defendants, or that they jointly ordered the pianos from plaintiffs, before they can recover; that plaintiffs having sued for pianos sold and delivered, cannot recover on proof that the pianos were sent to defendants to be sold on com-

mission, or on any other proof, falling short of proof of sale and delivery; and that the jury must examine the testimony with reference to each of the defendants separately.  It is first assigned for error, that the District Court refused to charge the jury, that it was necessary for plaintiffs to show, that Adams had knowledge of the whole of the transactions, and consented thereto, (or what was equivalent thereto), before he could be made liable. It is assumed that the refusal of the court, to charge the jury as requested, was in effect saying to them, that one member of a partnership firm, without the consent of the other partner, can bind the firm in matters which are without the scope of the partnership business.

The law is well settled, as claimed by defendants' counsel, that one partner cannot bind the firm, by any contract made in the name of the firm, unless it be in a matter within the scope of the partnership dealings, or falling within the ordinary business and transactions of the firm. *Western Stage Co.* v. *Walker*, 2 Iowa, 512; Story on Partnership, section 322.  Looking at all the instructions given in this case, and at the testimony contained in the record, we cannot say that the court undertook to lay down a different rule, or that there was error in refusing the instructions asked.  The respective letters of Adams & Hackley to plaintiffs, of June 19, 1854, though signed in their individual names, were evidently written in the name and upon the business of the firm.  Adams says: "your advertisement of pianos is in our paper, and your offer to us of an agency, we accept."  Attached to this, is the letter of Hackley, in which he says: "I think you would promote your own interests, by shipping to us, a small, but select assortment of your instruments."  The jury were told, that "they must be satisfied, that the busi-" ness of buying and selling pianos, was within the scope of " the partnership business, or that defendants jointly, and as " co-partners, specially ordered the pianos, before a joint " liability was incurred."  By this instruction, the question of fact was left for the determination of the jury, whether

the dealing in pianos had been made a part of the business of the firm. And from the evidence, we think, they were authorized to infer that the defendants concurred in accepting, in the name of the firm, the agency offered them by plaintiffs, and had agreed to add to their regular partnership business, that of dealing in pianos.

It is to be observed, that defendants in their letters to plaintiffs, make no stipulation as to the terms on which the pianos are to be sent to them. Nothing is said of their being sent to be sold on commission. They accept the agency, and advise plaintiffs to send on their pianos to them. In reply, the plaintiffs inform them, that they do not consign pianos to be sold on commission—they decline all such applications. They have, however, shipped to defendants two pianos, on these terms: that they are to be at the risk of the defendants, when delivered at Albany, on the railroad or canal, and all sales are to be at defendants' risk; that the pianos are sold to them, at the usual rates; but they agree to wait with defendants for payment, until the pianos are sold by them, charging them interest on account after four months; and that if the defendants choose to purchase the pianos "out and out," twenty per cent. will be deducted from the invoice price, at six months credit—if for cash, a discount of five per cent. additional will be made. Upon these terms, the first two pianos were shipped to defendants. Upon notice to them of the terms of the plaintiffs, if not acceptable to them, they should have notified plaintiffs of their dissent, and their refusal to receive the pianos. Instead of this, Hackley, one of the defendants, writes to plaintiffs, from the Tribune office, September 29: "we have just effected a sale of your two pianos, at six months." Having made the dealing in pianos a part of their partnership business, and notified plaintiffs thereof, this letter, though written and signed by Hackley alone, binds the firm. There is no expressed dissent to the terms on which the pianos were sold to them, and no unwillingness manifested to continue the business and agency on the same terms. On the contrary, they inform the plaintiffs, that

they "have a prospect of selling two or three more, if they had them." In accordance with this suggestion, the remainder of the pianos charged, are shipped to defendants.

Where a partnership firm, embarked in a particular business, to which their engagements are confined, and to which alone their partnership contracts extent, by mutual agreement, enlarge the sphere of their operations, and include another branch of business, the power of each partner to bind the firm by his contracts, is co-extensive with the whole business of the partnership; and the acts of each member are as binding on the firm, in the new branch of business in which they are engaged, as they are in the former regular and ordinary business. If Adams & Hackley agree to add the business of dealing in pianos, to their regular business of printing and publishing newspapers, the acts of each member of the firm, are binding on the other, in every thing connected with the buying and selling of pianos, and neither can object that the other partner makes contracts, or incurs liabilities, in the name of the firm, which, by virtue of the relation existing between them, shall bind them both. It was not necessary, therefore, in our view of the law and the facts, that the plaintiffs should prove that Adams had knowledge of all the transactions which passed between his co-partner and the plaintiffs, and that he consented thereto. He is presumed to consent to all the acts of his partner, within the scope of the business of the firm.

The second assignment of error, is upon the refusal of the court to charge the jury, "that if the letter of Boardman & Gray does not accept the offer and terms stated by Adams, it is necessary to bring home to Adams a knowledge of the contents of the letter of Boardman & Gray. The refusal to give this instruction, was not erroneous. No offer of terms was made by Adams, in his letter to plaintiffs. He informs them that the offer to their firm, of an agency for the sale of their pianos, is accepted by defendants, and advises plaintiffs that they had better have one of their pianos in Dubuque. Having accepted

the agency proposed, and agreed to make the dealing in pianos a part of their business, as a partnership, Adams, as one of the partners, is equally and jointly with Hackley, liable for all pianos sold and delivered to the partnership firm. Even if Adams never saw or knew anything of the letter of plaintiffs, he is bound by the acts of his co-partner.

Judgment affirmed.