AALT VAN DYK et al., Appellees, v. G. MOSTERDT, Appellant.

**APPEAL AND ERROR:** Errors Against Nonappellant—Effect. An appellant may not ride to victory on errors, if any, suffered by a litigant who does not appeal.

**PLEADING:** Amendments—Substituting Partnership Entity for Individual Plaintiff. The pleadings in an action on a partnership claim, improperly brought in the individual name of one of the partners, may be amended during trial by substituting the partnership entity as plaintiff. Nonsuits upon purely technical grounds are not favorites of the law.

**ANIMALS:** Negligent Handling—Sufficiency of Evidence. Evidence reviewed and held to present a fact question for the jury (a) whether an animal died as the result of negligent handling, and (b) whether defendant was responsible therefor.

**PARTNERSHIP:** Partners—Negligence of—When Binding on Partnership. Whenever a partner steps aside the scope of the partnership and acts not for the partnership but solely for someone else, *even with reference to partnership property,* his new principal is bound thereby, not the partnership.

PRINCIPLE APPLIED: Two partners owning a stallion placed the same in the hands of a bailee for keeping. One of the partners was a son of and lived with and worked for the bailee. This partner, in carrying on the business of his father (the bailee) and solely in the interest of the bailee, negligently directed the horse to be used in certain work and in a certain manner, which resulted in the death of the animal. *Held,* the partnership was not, and the bailee was, bound by the acts of the partner.

**PARTNERSHIP:** Action on Partnership Claim—Partner Made Involuntary Plaintiff—Nonavailable Objection. A defendant in an action on a partnership claim will not be permitted to interpose

the objection that one of the partners was made plaintiff without such partner's consent.

*Appeal from Sioux District Court.*—HON WM. HUTCHINSON, Judge.

WEDNESDAY, JUNE 23, 1915.

ACTION to recover damages for negligence resulting in the death of plaintiff's horse. Judgment for the plaintiffs. Defendant appeals.—*Affirmed.*

*J. U. Sammis* and *P. D. Van Oosterhout,* for appellees.

*Gerrit Klay,* for appellant.

GAYNOR, J.—On the 20th day of August, 1913, Aalt Van Dyk brought an action in the district court claiming that he was the owner of a half interest in a certain stallion; that, at the close of the season of 1912, he turned the stallion over to the care and custody of the defendant; that defendant was a practical horseman and had dealt with horses to a considerable extent for a number of years; that the defendant took the stallion into his custody and care; that, about the middle of the month of August, he undertook to haul sand with the stallion to his farm, a distance of four miles; that the stallion was a very heavy horse, weighing about 1,900 pounds; that the weather was extremely hot, ranging between ninety and one hundred degrees temperature; that the defendant negligently hitched the horse with a light horse and put the same in charge of a green hand, or hired man not accustomed to driving horses, and proceeded to haul sand as aforesaid; that the horse was negligently and carelessly overdriven and overtaxed as a result of the use to which he was put, and, by reason of the unskillfulness of the driver, said stallion became overheated and died on the road between Rock Valley and defendant's farm by reason of the negligence of the defendant aforesaid; that the value of the half interest in the horse was

$500; that, in the death of the horse, he was damaged to that extent, and demands judgment for $500.

Defendant answered this petition, denying each and every allegation, and further pleading that plaintiff and one Jacob Van Beek were partners in the ownership of said stallion; that they, the partners, used said stallion for services during the season of 1912, and up to the 1st of July, 1912, and together paid the expenses and shared the profits and losses connected with said use; that on or about the 15th day of February, 1912, said partners made an oral agreement with the defendant, whereby defendant was to feed and furnish stable room for said horse whenever said partners should desire to keep said stallion at defendant's place, during the season and for the balance of the year; that, in consideration of said feed and stable room, defendant was entitled to use said stallion in ordinary farm work, and to breed the same to his mares free of charge; that after the 1st of July, 1912, and up to the time said horse died, Jacob Van Beek, one of the partners, was living at defendant's house, and had charge and supervision of said stallion while working for defendant.

Upon these issues, the plaintiff introduced his testimony. At the conclusion of plaintiff's testimony, and after plaintiff had rested, the defendant filed a motion for an instructed verdict, upon the grounds, among others, that the evidence conclusively showed that the stallion in question was held in partnership; that the partnership affairs were not settled, and no accounting had been had. Thereupon the plaintiff, through his attorney, made the following statement:

"If they want Van Beek joined here as a partner we can do it in about five minutes' time and avoid all this question. I understand he is right here in the courtroom, and that won't be denied. And we will try this thing out. The parties are all here, the witnesses are here, and there will be no occasion for making it necessary to commence another suit and go through all the preliminary expense. But if it

should be thought by the court that a partnership between Van Beek and Van Dyk existed, and there could be no partnership between any other parties as this record stands, we will ask now for a few minutes' time to amend and we will bring this action in the name of the partnership, and, as I say, will briefly amend our petition, but first the court can rule on the proposition as to whether the evidence shows there is a partnership.

"Defendant objects at this time to be forced into a new action with new parties. Plaintiff has rested, and if they want to bring a new action they are perfectly welcome, but we would not want a new action brought here at this time. The plaintiff having practically admitted that he has no cause of action if there is a partnership practically settles this question."

To which the court said:

"Well, these parties being present in court, the plaintiff may have a little time to amend and bring them in." (To all of which the defendant excepts.)

Thereupon an amended and substituted petition was filed in the name of the partnership, stating the cause of action substantially as set out in the original petition, and basing the right to recover upon the same facts therein alleged, but asking for judgment in favor of the partnership for the full value of the stallion.

Thereupon, Jacob Van Beek, the other partner, who was joined in the suit, filed a motion asking that his name be stricken from the record, stating that he refused to be a party to the record, and alleging facts which tended to exonerate the defendant from liability for the loss of the horse, and alleging that he, Van Beek, directed the use of the horse and the manner in which it was used. On motion of plaintiff, this motion was stricken from the record. Thereupon, Jacob

Van Beek filed an amendment to the amended and substituted petition as follows:

"That on the 20th day of August, 1912, the plaintiff Jacob Van Beek ordered one Lockhorst to hitch the stallion belonging to plaintiff to the wagon and haul a load of sand from Rock Valley, Iowa; that said Lockhorst did so use said horse with the full consent and authority of the plaintiff; that the use of said horse and in said manner was unknown to the defendant G. Mosterdt; that the said Lockhorst used said horse in hauling said sand in a careful and prudent manner, and was not in any way negligent in the use of said horse, and that the death of said horse was in no way caused in the manner of its use or by any negligence of the party using it or the said G. Mosterdt, defendant."

Upon the motion of the plaintiff, this amendment filed by Van Beek was stricken from the record, on the ground that he was seeking to set up a defense for the defendant, to which Van Beek excepted.

Thereupon, the defendant filed an answer to the amended and substituted petition of the plaintiff, in which he denied every allegation, admitted that the plaintiffs were partners, alleging that they bought the stallion in controversy from the defendant for $800, and that the defendant agreed to board and care for the stallion until March 1, 1913, and further answered that on the 20th day of August, 1912, plaintiffs, without any knowledge on the part of the defendant, instructed one Lockhorst, who was then in the employ of the defendant, to use said horse and haul the sand from Rock Valley, Iowa; that the plaintiffs were present when said sand was hauled, and had full knowledge of the manner in which said horse was used and authorized and directed the use of the horse, of which they now complain, and which they allege caused its death; that the plaintiffs are now estopped from claiming any negligence on the part of the defendant, and that if there was any negligence in the manner of its use, it was due to their own contributory negligence.

Thereupon, without further objection, the cause proceeded to final trial, defendant introducing evidence in defense, and the plaintiffs introducing evidence in rebuttal, and the defendant, evidence in surrebuttal, at the conclusion of which both parties rested.

Thereupon the defendant filed the following motion:

"(1) The evidence conclusively shows that the plaintiff Jacob Van Beek was present when this horse was used to haul sand; that he directed and instructed the driver, Gerrit Lockhorst, to so use the horse, and that it was with the full knowledge and authority and consent of the plaintiff that the horse was being used in such manner, and that the plaintiff Jacob Van Beek never at any time made any objection to said use. There is no evidence in the record to support a verdict.

"(2) There is no evidence in the record to support a verdict by the jury that the defendant was in any manner guilty of any negligence, and if there was any negligence in the use of the horse, it was at the express request and demand and the knowledge of the plaintiffs, and they by their conduct contributed to his death by their negligence."

This was by the court overruled. Thereupon, the cause was submitted to the jury with instructions from the court. The jury returned a verdict for the plaintiffs. Judgment being entered upon the verdict, defendant appeals, and assigns the following grounds for reversal:

(1) The court erred in overruling defendant's motion to direct a verdict at the close of plaintiff Van Dyk's case, and in permitting him, over defendant's objection, to bring in a new party plaintiff.

(2) The court erred in overruling plaintiff Van Beek's motion to strike his name as party plaintiff.

(3) The court erred in striking the amendment of plaintiff Van Beek from the files.

(4) The court erred in overruling defendant's motion to direct a verdict at the close of all the testimony.

(5) The court erred in refusing to give the instruction asked for by defendant.

(6) The court erred in giving instruction No. 8 to the jury.

(7) The court erred in giving instruction No. 9 to the jury.

(8) The court erred in overruling defendant's motion for a new trial.

We need not consider any alleged error committed to the prejudice of Van Beek, if any, in overruling his motion to strike his amendment from the record, and in striking out his amendment to plaintiffs' amended and substituted petition, for the reason that Van Beek has not appealed, and is not here complaining of the action of the court in this respect. This disposes, without any further consideration, of the second and third grounds for reversal. The other grounds, we will take up in the order in which they are presented.

1. APPEAL AND ERROR: errors against non-appellant: effect.

1. The court erred in overruling defendant's motion for a directed verdict at the close of plaintiffs' testimony. This motion, so far as material to be considered here, was based on the thought that an action could not be maintained by one partner to recover a partnership debt. There appears to have been no ruling on this motion. On the request of the attorney representing the plaintiff, the partnership was substituted as plaintiff in the action, and the cause proceeded to trial upon the issue of fact as originally tendered, the partnership being conceded by both parties, in the further progress of the trial, to be the real party in interest. It is claimed, however, that the court erred in allowing the plaintiff to file an amended and substituted petition,

2. PLEADING: amendments: substituting partnership entity for individual plaintiff.

and in changing the parties plaintiff in the suit. It is conceded that this action was originally brought in the name of one of the partners, upon a cause of action, if any, existing in favor of a partnership of which the plaintiff was a member. At the conclusion of plaintiff's testimony, it developed that the cause of action existed in favor of this partnership, and the motion was predicated upon the thought that the plaintiff, as a member of the firm, could not maintain an action to recover upon a partnership claim.

Sec. 3468 of the Code of 1897 provides: "Actions may be brought by or against a partnership as such."

Our court has uniformly held that a partnership is a distinct, legal entity, capable of transacting business and making contracts, and may sue and be sued in a partnership name. See *Brumwell v. Stebbins,* 83 Iowa 425.

The question then is, did the court err in allowing the partnership to be substituted as plaintiff in a case brought by one of the members of the firm upon a partnership debt?

To allow amendments is the rule; to deny them, the exception. As said by this court, "The scope of a new pleading is limited to strengthening, developing, or re-enforcing the original cause of action, or of enlarging the extent, or changing the relief sought. Then it meets the very purpose for which such pleadings are allowed." See *Kean v. Rogers,* 146 Iowa 559.

Did the amendment in this case go beyond the scope and purpose for which amendments are allowed, to wit, the furtherance of justice, and the avoidance of nonsuits upon purely technical grounds?

The action of the court below was not without authority. In *Myers v. C. B. & Q. Ry. Co.,* 152 Iowa 330, a husband brought a suit to recover for the death of his wife. A demurrer was interposed to his petition on the ground that he was not a proper party to maintain the action. An amended and substituted petition was filed by F. K. Myers, as administrator of the decedent, claiming damages to the estate. De-

fendant moved to strike this amended petition on the ground
that it changed the parties plaintiff, and alleged a new cause
of action.   This motion was overruled and exceptions taken.
An answer was subsequently filed.   The court held that there
was no error in allowing the amendment.   The court said:
"Where a party sues in his own right, he may, if the facts
warrant, amend his complaint so as to make the suit stand
in his representative capacity, and conversely, if he sues in
his representative capacity, he may be allowed to amend by
declaring as an individual; and in either instance it is not
considered a substantial change in the cause of action,"—
citing authorities.

The court further said, in substance, that, when there is
an appearance to the action, and the defendant tests the right
of the named plaintiff to maintain the action, the name of
the proper parties plaintiff may be substituted in the action
by an amended pleading, subject, of course, to an apportion-
ment of the costs, and the right of the defendant to a continu-
ance, if taken by surprise.   If this is not the rule, the action
must abate and another be brought.   This, under the statute,
should not be the rule unless substantial justice so demands.
The statute provides in terms that the court, in furtherance
of justice, may permit a party to amend any pleading by
adding to or striking out the name of a party.   The original
plaintiff was without capacity to sue upon a partnership claim.
The transaction upon which the action was based remained
the same.   It was the same cause of action that was sought
to be enforced after the substitution of the partnership.   We
think this case is authority for the court's action in allowing
the amendment by substituting the partnership as plaintiff
in the case.   Further than that, the defendant made no motion
to strike the amendment from the file, but responded thereto
by answering; and nowhere in his motion for a directed ver-
dict did he raise the question here urged.   We think on this
point there is no ground for reversal.

The next error assigned is that the court erred in overruling defendant's motion for a directed verdict at the close of all the testimony. This and the eighth error assigned may be considered together. The eighth error is that the court erred in refusing to sustain the motion for a new trial. The motion for a directed verdict was based upon two grounds, both of which involve the same question as presented in the motion for a new trial, to wit, that the evidence is insufficient to justify the verdict. In the view we take of this case, these assignments cannot be sustained, for the reason that it is not in dispute that the horse in question was placed in the custody and care of the defendant by the partnership. There is a controversy as to the terms upon which he was given to the defendant. The plaintiffs' testimony is that the defendant was to keep the horse until the season of 1913 and have the privilege of breeding his mares; that he was to give the horse exercise to keep him in health, in good shape. The defendant says he knew how to take care of horses; was an experienced horseman; that the horse was perfectly healthy, in good condition, and had never been sick during that season.

Ed Moss testifies that, on the day the horse died, he met Lockhorst, the hired hand of the defendant, driving the stallion and another horse hitched to a wagon. This was about a mile east and three miles south of Rock Valley, and about half a mile from defendant's place. He said that he noticed, when he saw Lockhorst coming towards him with the stallion and the other horse, the horse stood still, or wanted to stand still. When he got up to him, he was standing still. The horse fell practically immediately after that. The horse weighed about 2,000 pounds; was in good condition. Observed no symptoms of colic about the horse. The horse driven with the stallion weighed about 1,100 pounds. This was about 11:00 or 12:00 o'clock in the day. At the time the horse fell, he was going up a steep hill. The wagon was loaded with sand.

*3. Animals: negligent handling: sufficiency of evidence.*

It was admitted by the defendant that Lockhorst was working for the defendant, and at the time the horse died, was driving him for the defendant.

It further appears from the testimony that after the death of the horse, the defendant said the stallion was not well the night before, and that he thought he had kidney trouble the night before; that he was all right in the morning, so he told the boys to hitch him up to the wagon again and they did. There is evidence that defendant told the boys to put the horse on the wagon to haul the sand. There is a controversy as to who told Lockhorst to hitch up the horse.

Dick Van Beek testifies that the defendant is his stepfather; that he was living with and working for the defendant at the time of the occurrence complained of; that the horse was in good condition prior to his death; that he fed the stallion the morning he died; that he ate his feed and was in good condition; that he did not see the stallion hitched up; that his brother, Jacob Van Beek, was foreman of the place, and when the father was not at home, the plaintiff Jacob Van Beek gave orders as to what should be done on the farm.

Lockhorst testifies that Dick Van Beek, son of defendant, hitched the stallion to the wagon; that he had an old horse with him. Jake, the plaintiff, went along with another wagon; that Jake was first ahead and then Lockhorst got ahead; that coming back, Jake stopped with his team at Rock Valley.

The jury might well have found that the death of the horse was not due to the use, but to the manner in which it was used.

Jacob Van Beek testifies that he directed the hitching up of the horse for the hauling of the sand.

These were all questions of fact for the jury, but the evidence shows that the defendant stated that he told the boys to hitch the horse to the wagon. We do not know what the fact is about this matter. The jury determined it adverse to the defendant. It appears without controversy that Lockhorst was in the employ of the defendant, as was also Jacob

Van Beek; that they were engaged in defendant's business; that whatever they did with respect to the horse was done for the defendant, and not for the plaintiff partnership; that they were servants of the defendant, and were performing duties assigned them by the master; their negligence was the negligence of the defendant. It was the duty of the defendant not negligently to injure this horse while in his custody. That was the duty he assumed to the partnership when he took charge of the horse. If the horse was negligently driven and handled, and, as a proximate result of such negligence, he died, the defendant would be liable on the theory of *respondeat superior* for the negligence of those in whose custody he had placed the horse, even though for a temporary purpose, providing the injury occurred while in the performance of the servant's duty to the master. The defendant in his argument says:

"There is little or no dispute about the facts in this case. We concede for the purpose of this appeal that the use of the horse at the time and in the manner shown was negligence, and caused his death by apoplexy."

4. PARTNERSHIP: partners: negligence of: when binding on partnership.

It is next contended that the court erred in refusing to give instructions asked by the defendant. This is the fifth error assigned. The instruction asked by the defendant is as follows:

"Each member of a partnership firm is the agent of and the representative of every other member, and every act done by one member within the scope of the partnership business is binding upon every other member, regardless whether the commission of such act at the time, or before it was committed, was known to the other member of the firm. You are therefore instructed as a matter of law that if you find by a preponderance of evidence that the plaintiff, Jacob Van Beek, on the 20th day of August, 1912, was present and knew that the

stallion was used to haul a load of sand from Rock Valley, that he directed and instructed Lockhorst, the driver of the stallion at the time he died, to use said stallion to haul said load of sand, and at no time made any objections thereto, then the plaintiffs were guilty of contributory negligence, and your verdict must be for the defendant, and you will so find."

The court, however, in its eighth instruction, gave the above instruction substantially as asked, and then added:

"If, however, you find from the evidence that one of the partners, Jacob Van Beek, was the stepson of the defendant, and at the time in question was living with and working for the defendant, and in the defendant's employ, and under defendant's supervision managing and directing his father's, the defendant's, business, in the absence of the defendant, and at the time in question, he was acting for and in behalf of his father in using said stallion in hauling sand, and was not acting in any way for the partnership in question, and that what he did at said time in authorizing, permitting and directing the use of the said horse was done for the sole use and benefit of the defendant, his stepfather, then and in that case, the plaintiffs would not be guilty of contributory negligence, and they would not be estopped from maintaining this action."

The defendant, in his fifth assignment of error, complained that the court did not give the instruction asked, and in the sixth assignment of error, complained that the court gave this eighth instruction. The fore part of instruction 8 is in words of the instruction asked; therefore plaintiff's complaint that the court did not give the instruction asked has no basis in this record.

The complaint of the eighth instruction relates to the latter part, in which the jury are told that if Jacob Van Beek, at the time of the injury, was acting for the defendant, and not for the partnership, and that what he did, if he did

anything, in authorizing, directing, and permitting the use of the horse, was done solely as servant of the defendant, and in discharge of duties which he owed the defendant as a servant, the partnership could not be charged with contributory negligence on account of the action of Jacob Van Beek, touching the matter. As said before, a partnership is a distinct entity and recognized as such in the law. The members of the firm are simply the agents of the entity and can only bind it within the scope of their legal authority as such agents. There is no question but that one may be agent of two parties, but as such, can bind only the one for whom he acts, when the act is within the scope of his agency. If the jury should find, as a matter of fact, that Jacob Van Beek was the agent of the defendant at the time, acting for and in behalf of the defendant and in the defendant's business, and not for the partnership or within the scope of his agency as a member of the firm, then his acts clearly bind the party for whom he was acting, and that was all the court told them in this instruction. The court simply said: If Van Beek was acting as agent for the defendant, acting for and in behalf of the defendant in using the stallion, and not acting in any way for the partnership, and that what he did was done for the sole use and benefit of the defendant, then, in that case, the legal entity known as the partnership would not be chargeable with contributory negligence by reason of his act. We think there was no error in this instruction under the record made in this case. Before the act of one partner can be charged against the firm as constituting negligence, and create liability on the part of the firm for the act, it must appear that the act was done within the scope of his agency and authority to act for the partnership. The negligence must have been committed within the scope of the partnership or in the furtherance, or attempt to further, the interests of the partnership. His act must be the act of the partnership, to be binding upon it. In nothing that Jacob Van Beek did on this day did he assume to or act for the

partnership. All that he did and all that he attempted to do was in the interest of this defendant, and as servant of the defendant.

As bearing upon this question, see *Hubenthal v. Kennedy,* 76 Iowa 707. In this case it is said, where one is sought to be charged with an act done by a partner: "Kennedy did not assume to bind anyone but himself by his agreement, but it was a mere personal arrangement between him and the plaintiff. If it should be conceded that he and Dickinson were partners, still, as he did not assume to contract for the firm, it was not bound by the agreement." See also, as bearing upon this question, *Knox v. Buffington & Co.,* 50 Iowa 320; *Boardman & Gray v. Adams & Hackley,* 5 Iowa 224.

In *Mathre v. Story City Drug Co.,* 130 Iowa 112, this court said: "It is fundamental . . . that the partnership and each partner are liable for the acts of the others when they are acting in the ordinary course of the business of the firm, or are authorized to so act. On the other hand, a firm or a partner will not . . . be liable for the wilful or negligent tort of a partner acting beyond the scope of his authority." See also *Gwynn v. Duffield,* 66 Iowa 708, 712; *Randolph Bank v. Armstrong,* 11 Iowa, particular point at page 518.

The next contention is that the court erred in giving the ninth instruction to the jury. In this ninth instruction complained of, the court told the jury in substance that an action for damages to partnership property must be brought in the name of the partnership; that one partner has the right to institute the suit for the partnership, and that he had a right to join his partner in such a suit, even against the partner's objection.

5. PARTNERSHIP: action on partnership claim: partner made involuntary plaintiff: nonavailable objection.

There is nothing prejudicial in this statement of the law, so far as this defendant is concerned. There is no contention that this suit was not based upon damage to partnership property. The whole theory of the trial, after the filing of the

substitute petition, was that the action was being prosecuted by the partnership. In view of the action of the other partner upon the trial, we think this instruction was peculiarly pertinent. We find no error here.

On the whole record, the cause ought to be and is— *Affirmed*.

Deemer, C. J., Ladd and Salinger, JJ., concur.